UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOMINEKE ALEN FERGUSON, | Case No. 2:17-cv-03228-SHK |
| Plaintiff, | |
| v. | OPINION AND ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Domineke Alen Ferguson ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying his application for child's disability insurance benefits ("CDIB"), under Title II of the Social Security Act (the "Act"). This Court has jurisdiction, under 42 U.S.C. § 405(g), and, pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of the undersigned United States Magistrate Judge. Because the Commissioner's decision denying Plaintiff's CDIB is based on the proper application of the correct legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## I. BACKGROUND

Plaintiff protectively filed an application for CDIB on July 2, 2014, alleging disability beginning on October 1, 2006. Transcript ("Tr.") 159-65.[1] Following a denial of benefits, Plaintiff requested a hearing before an administrative law judge ("ALJ"). Tr. 115. Plaintiff appeared and testified at a hearing on January 6, 2016. Tr. 31-98. Following the hearing, the ALJ "sent medical interrogatories to Ashok I. Khushalani, M.D., an impartial medical expert in psychiatry . . . ." Tr. 17. In his responses, Dr. Khushalani indicated that "there are no records between 9/28/2009 to 9/28/2013 for me to formulate an opinion." Tr. 925. Upon receipt of Dr. Khushalani's responses to the interrogatories, the ALJ made them a part of the record and "proffered the new evidence to [Plaintiff's] attorney of record on January 29, 2016." Tr. 17, 295-97, 923-34. On February 9, 2016, Plaintiff's attorney "responded by letter, indicating that she had no comments to the proffered evidence and did not request for a supplemental hearing." Tr. 298. On March 9, 2016, the ALJ determined Plaintiff was not disabled.[2] Tr. 14-25. Plaintiff sought review by the Appeals Council, however, review was denied, on October 4, 2016. Tr. 1-5, 9-11. This appeal followed.

## II. STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on correct legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is "more

---

[1] A certified copy of the Administrative Record was filed on July 11, 2017. Electronic Case Filing Number ("ECF No.") 13. Citations will be made to the Administrative Record or Transcript page number rather than the ECF page number.

[2] Plaintiff later filed an application for supplemental security income ("SSI") under Title XVI of the Act on January 31, 2016, which the ALJ reserved judgment on, and returned jurisdiction of, to the initial determination level because Plaintiff's SSI application was filed after the January 2016 hearing. Tr. 17. Accordingly, Plaintiff's SSI application is not properly before this Court and is, therefore, not considered.

than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation and internal quotation omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

"'When evidence reasonably supports either confirming or reversing the ALJ's decision, [the Court] may not substitute [its] judgment for that of the ALJ.'" Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting Batson, 359 F.3d at 1196); see also Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002) ("If the ALJ's credibility finding is supported by substantial evidence in the record, [the Court] may not engage in second-guessing.") (internal citation omitted)). A reviewing court, however, "cannot affirm the decision of an agency on a ground that the agency did not invoke in making its decision." Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Finally, a court may not reverse an ALJ's decision if the error is harmless. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citation omitted). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

### III. DISCUSSION

#### A. Child's Disability Insurance Benefits

For a claimant to qualify for CDIB, the claimant must demonstrate that they are entitled to those benefits based "on the earnings record of an insured person who is entitled to old-age or disability benefits or who has died," and that the claimant: (1) is the insured person's child; (2) is dependent on the insured; (3) has applied for benefits; (4) is unmarried; and (5) is "under age 18; . . . 18 years old or older and ha[s] a disability that began before [the claimant] became 22 years old; or

3

[the claimant is] 18 years or older and qualif[ies] for benefits as a full-time student as described in [20 C.F.R.] § 404.367." 20 C.F.R. § 404.350(a)(1)-(5).

**B.     Establishing Disability Under The Act**

To establish whether a claimant is disabled under the Act, it must be shown that:

> (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and
>
> (b) the impairment renders the claimant incapable of performing the work that the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.

Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)). "If a claimant meets both requirements, he or she is 'disabled.'" Id.

The ALJ employs a five-step sequential evaluation process to determine whether a claimant is disabled within the meaning of the Act. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive and "if a claimant is found to be 'disabled' or 'not-disabled' at any step in the sequence, there is no need to consider subsequent steps." Tackett, 180 F.3d at 1098; 20 C.F.R. § 404.1520. The claimant carries the burden of proof at steps one through four, and the Commissioner carries the burden of proof at step five. Tackett, 180 F.3d at 1098.

The five steps are:

> Step 1. Is the claimant presently working in a substantially gainful activity [("SGA")]? If so, then the claimant is "not disabled" within the meaning of the [] Act and is not entitled to [DIB]. If the claimant is

not working in a [SGA], then the claimant's case cannot be resolved at step one and the evaluation proceeds to step two. See 20 C.F.R. § 404.1520(b).

Step 2. Is the claimant's impairment severe? If not, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant's impairment is severe, then the claimant's case cannot be resolved at step two and the evaluation proceeds to step three. See 20 C.F.R. § 404.1520(c).

Step 3. Does the impairment "meet or equal" one of a list of specific impairments described in the regulations? If so, the claimant is "disabled" and therefore entitled to [DIB]. If the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, then the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. See 20 C.F.R. § 404.1520(d).

Step 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is "not disabled" and is not entitled to [DIB]. If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at step four and the evaluation proceeds to the fifth and final step. See 20 C.F.R. § 404.1520(e).

Step 5. Is the claimant able to do any other work? If not, then the claimant is "disabled" and therefore entitled to [DIB]. See 20 C.F.R. § 404.1520(f)(1). If the claimant is able to do other work, then the Commissioner must establish that there are a significant number of jobs in the national economy that claimant can do. There are two ways for the Commissioner to meet the burden of showing that there is other work in "significant numbers" in the national economy that claimant

can do: (1) by the testimony of a vocational expert, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2 [("the Listings")]. If the Commissioner meets this burden, the claimant is "not disabled" and therefore not entitled to [DIB]. See 20 C.F.R. §§ 404.1520(f), 404.1562. If the Commissioner cannot meet this burden, then the claimant is "disabled" and therefore entitled to [DIB]. See id.

Id. at 1098-99.

### C. Summary Of Analysis By ALJ

With regard to Plaintiff's qualification CDIB, the ALJ found that Plaintiff was "[b]orn on September 29, 1991, [Plaintiff] had not attained age 22 as of October 1, 2006, the alleged onset date (20 C.F.R. 404.102 and 404.350(a)(5))." Tr. 20. The ALJ then turned to the five-step sequential evaluation process and determined at step one, that "[Plaintiff] has not engaged in substantial gainful activity [("SGA")] since October 1, 2006, the alleged onset date (20 C.F.R. 404.1571 et seq.)." Id. At step two, the ALJ found that "[p]rior to attaining age 22, [Plaintiff] had the following medically determinable impairments: history of attention deficit hyperactivity disorder (ADHD); bi-polar disorder; polysubstance abuse; and insulin-dependent diabetes mellitus." Id. After using the "special technique"[3] at step two, however, the ALJ found that none of Plaintiff's

---

[3] The regulations require the ALJ to use a "special technique" to evaluate whether a claimant's mental impairments are severe. See 20 C.F.R. § 404.1520a. The Agency "ha[s] identified four broad functional areas in which [it] rate[s] the degree of [a claimant's] functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." Id. at § 404.1520a(c)(3). The Agency rates the degree of a claimant's functional limitations in these four areas by "using the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." Id. at § 404.1520a(c)(4). "If [the Agency] rate[s] the degrees of [a claimant's] limitation as 'none' or 'mild,' [it] will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." Id. at § 404.1520a(d)(1).

impairments were severe because none of Plaintiff's "impairments or combination of impairments . . . has significantly limited (or is expected to significantly limit) [Plaintiff's] ability to perform basic work-related activities for 12 consecutive months." Id.

In reaching this conclusion, the ALJ specifically found that Plaintiff had only "mild" limitations in the first three functional areas and that Plaintiff had "no episodes of decompensation which have been of extended duration in the fourth area" as a result of Plaintiff's medically determinable mental impairments. Tr. 24 (internal quotation marks omitted). The ALJ, therefore, concluded that "[Plaintiff] has not been under a disability, as defined in the . . . Act, at any time prior to September 28, 2013, the date he attained age 22." Tr. 25.

In this appeal, Plaintiff raises only one issue: whether the ALJ erred in rejecting Plaintiff's subjective symptom statements concerning the extent and severity of his impairments. ECF No. 14, Pl.'s Notice of Mot. and Mot. for Summ. J.; Mem. of P. & A. in Supp. Thereof ("Pl.'s Mot.") at 4.

### D. ALJ's Consideration of Plaintiff's Testimony

Plaintiff argues that the ALJ erred in rejecting his claim by "fail[ing] to articulate specific and legitimate reason[s] much less clear and convincing reasons [for] rejecting [his] credible testimony." Id. Plaintiff specifically argues that the ALJ erred by rejecting his testimony by: (1) using "boilerplate language" that "yields no clue to what weight the [ALJ] gave [his] testimony"; (2) basing his finding, at least in-part, "on a belief that [Plaintiff's] testimony is not credible because it lacks support in the objective medical evidence," which, Plaintiff argues, "is always legally insufficient."; and (3) basing his finding, at least in-part, on Plaintiff's ADLs because "the fact that [Plaintiff] had some ability some of the time to perform something is not reason enough to find him not credible." Id. at 6-9.

/ / /

/ / /

### 1. ALJ's Analysis Regarding Plaintiff's Credibility

In assessing the Plaintiff's testimony, for purposes of whether Plaintiff qualified for CDIB, the ALJ focused on the time period from "September 28, 2009 (the date the claimant attained age of 18) through September 28, 2013 (the date the claimant attained age 22). Tr. 17. The analysis did not inquire as to whether the claimant qualified for SSI benefits as those benefits were the subject of a separate, then-ongoing, process. Id.

The ALJ began his analysis of Plaintiff's testimony by noting that Plaintiff "alleges that he is limited in his ability to work by diabetes mellitus, enlarged liver, learning disorder, bi-polar disorder, depression[,] and psychotic episode." Tr. 21 (citing Tr. 180). The ALJ also noted that Plaintiff testified that he "was unable to work because he had problems with concentration and understanding some things," and "needed additional explanation with certain things." Id. The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence[,] and limiting effects of these symptoms are not entirely credible." Id. The ALJ noted several reasons to support this adverse credibility finding. Tr. 21-23.

First, the ALJ noted that "during the relevant period at issue, the objective evidence and [Plaintiff's] treatment history were inconsistent with [Plaintiff's] allegations that he was unable to perform any work activity." Tr. 21. The ALJ observed that, with regard to Plaintiff's physical impairments, Plaintiff was only seen once during the relevant time period and that the physical examination conducted during that visit yielded "unremarkable" results and that Plaintiff was "discharged with the diagnosis of insulin-dependent diabetes mellitus and alcohol abuse." Tr. 22 (citing Tr. 557-58). The ALJ also noted that although Plaintiff "was diagnosed with insulin-dependent diabetes mellitus prior to attaining age 22 [citation], there was no evidence of any end organ damage" in the medical record.

8

Id. The ALJ also observed that Plaintiff "stated that he checks his blood sugar 1-3 times a week even though he is aware that he should check it [five] times a day." Tr. 21. The ALJ also noted that "although not clearly malingering, the consultative examiner noted exaggeration of symptoms for financial gain or malingering could not be excluded." Tr. 23 (citing Tr. 613). The ALJ concluded that "the lack of [Plaintiff's] treatment history or abnormal physical examination during the relevant time period at issue suggests that [Plaintiff's] diabetes was controlled with medication, and his symptoms and limitations were not as severe as [Plaintiff] alleged." Tr. 22.

Similarly, with regard to Plaintiff's mental impairments, the ALJ noted that "the lack of treatment history or aggressive treatment during the relevant period at issue suggests that [Plaintiff's] alleged symptoms and limitations due to [Plaintiff's] history of ADHD, bi-polar disorder, and history of substance abuse in remission were not as severe as he purported." Id. The ALJ noted that besides "seeing a psychiatrist . . . on and off beginning in July 2007 for his bi-polar disorder and ADHD . . . there is no evidence showing [that Plaintiff] was seeing any psychiatrist from the period when he attained age 18 through the date he attained age 22." Id. The ALJ added that "a discharge note from . . . November 3, 2011, shows [that Plaintiff] was diagnosed with bi-polar disorder and depression" but that Plaintiff "was discharged against medical advice." Id. (citing Tr. 751). The ALJ also observed that Plaintiff was seen in October 2012 for mood disorder and presented as a danger to himself and others and "was discharged with alcohol abuse." Id. (citing Tr. 557-58). Finally, the ALJ noted that although Plaintiff "alleged a learning disability, no doctor has provided such diagnosis" and that although Plaintiff "was placed on an Individualized Education Plain (IEP), . . . he did graduate from high school." Id. (citing Tr. 274, 277, 771-812). The ALJ again referred to this lack of objective evidence during the relevant time period by citing

to Dr. Khushalani's inability to assess the severity of Plaintiff's impairments. Tr. 23 (citing Tr. 923-934).

Second, the ALJ noted that Plaintiff's ADLs "are inconsistent with his alleged degree of impairments." Id. The ALJ noted that during the relevant time frame, Plaintiff "lived alone and adequately cared for himself," was "able to manage his own finances, as he received general relief and food stamps . . . [and] admitted to panhandling for money." Id. The ALJ also noted that Plaintiff "reads newspapers, particularly the sections he enjoys such as comics and sports, and is able to understand what he reads." Tr. 21. The ALJ also observed that Plaintiff worked as a janitor for two days, but quit that job. Id. (citing Tr. 611). The ALJ also pointed to the testimony of Plaintiff's grandmother, that Plaintiff does "household chores and yard work, but [that Plaintiff] does not have good stamina." Id. The ALJ concluded that "[i]t appears that [Plaintiff's] limited range of daily activities is a lifestyle choice and not due to any established impairment." Tr. 23.

Third, the ALJ found that Plaintiff's history, which includes "report[s] that he had been arrested at least [five] times for charges relating to stolen property . . . shows a greater capacity for planning and carrying out activities than [Plaintiff] admits," as well as a "propensity for dishonesty and a disregard for societal norms," which "makes his credibility highly suspect." Tr. 22 (citing Tr. 602).

Finally, the ALJ noted that Plaintiff provided inconsistent and contradictory statements throughout the record. Tr. 22-23. For example, the ALJ noted that Plaintiff testified that he had never worked, but also reported that he worked as a janitor for two days before quitting. Tr. 22. The ALJ also noted that Plaintiff "reported that he had been arrested at least [five] times for charges relating to stolen property [citation], and elsewhere he reported that he was arrested and jailed two times or more for petty theft," but "at the hearing, [Plaintiff] testified that he had a history of petty theft for which he was given a ticket, but did not serve jail time." Id. (citing Tr. 602, 611). Finally, the ALJ observed that Plaintiff provided

conflicting information regarding his education level. Tr. 23. The ALJ specifically noted that "[a]t times, [Plaintiff] reported the highest grade he completed is [tenth] grade," but "at the hearing, he stated he graduated from high school." Id. (citing Tr. 181, 274, 277). The ALJ also noted in another portion of her decision that Plaintiff testified that after he "completed the adult education program, he attended film school and culinary school," and stated that "he did not complete this schooling," but "that he passed the introductory classes." Tr. 21.

### 2. Standard To Review Plaintiff's Pain Related Claims

When a claimant has medically documented impairments that "might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ must give 'specific, clear, and convincing reasons for rejecting' the testimony by identifying '<u>which</u> testimony [the ALJ] found not credible" and explaining '<u>which</u> evidence contradicted that testimony.'" <u>Laborin v. Berryhill</u>, 867 F.3d 1151, 1155 (9th Cir. 2017) (emphases in original) (quoting <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 489, 494 (9th Cir. 2015)). "This is not an easy requirement to meet: 'the clear and convincing standard is the most demanding required in Social Security cases.'" <u>Garrison v. Colvin</u>, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting <u>Moore v. Comm'r Soc. Sec. Admin.</u>, 278 F.3d 920, 924 (9th Cir. 2002)).

### 3. The Record Supports The ALJ's Credibility Analysis.

Here, the Court agrees with Plaintiff's argument that the ALJ's boilerplate language at the outset of his adverse credibility finding does nothing to assist this Court with its analysis of the ALJ's finding. See <u>Treichler v. Comm'r Soc. Sec. Admin.</u>, 775 F.3d 1090, 1103 (9th Cir. 2014) (finding that "[a]n ALJ's 'vague allegation' that a claimant's testimony is 'not consistent with the objective medical evidence,' without any 'specific findings in support' of that conclusion is insufficient for our review" and that this "hackneyed language seen universally in ALJ decisions adds nothing" to the Court's analysis of the ALJ's finding (internal

11

citations omitted)). The Court finds, however, that the mere inclusion of this boilerplate language was harmless and does not constitute reversible error. See Laborin v. Berryhill, 867 F.3d 1151, 1154-55 (9th Cir. 2017) (finding "that inclusion of [similar] flawed boilerplate language is not, by itself, reversible error and can be harmless. It does not, however, add anything to the ALJ's determination of either the RFC or the claimant's credibility." (internal citation omitted)).

The Court is unpersuaded, however, by Plaintiff's remaining arguments that the ALJ erred by finding his testimony not credible because it lacked support in the objective medical evidence, and that the ALJ erred in her analysis of Plaintiff's ADLs.

When determining whether the Claimant's subjective symptom testimony is credible, "[t]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). The ALJ may also consider:

>  (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid;
>  (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and,
>  (3) the claimant's daily activities.

Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).

While an ALJ cannot reject the severity of subjective complaints solely on the lack of objective evidence, the ALJ may nonetheless look to the medical record for inconsistencies. See Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599-600 (9th Cir. 1999) (finding that "[t]he ALJ provided clear and convincing reasons for rejecting [the plaintiff's] testimony" by "point[ing] to specific evidence in the record—including reports by [the plaintiff's doctors]—in identifying what

12

testimony was not credible and what evidence undermined [the plaintiff's] complaints.").

Here, the ALJ pointed to specific evidence in the record that undermined Plaintiff's testimony and also supplemented the record with additional medical evidence after the administrative hearing. For example, the ALJ observed that the consultative examiner noted possible exaggeration of symptoms for financial gain and that malingering could not be excluded. Tr. 23. The ALJ also pointed to unremarkable results in Plaintiff's limited examination records during the relevant time period and the fact that there was no evidence of any end organ damage as in the medical record as a result of Plaintiff's diabetes. Tr. 22. The ALJ even sent medical interrogatories to an impartial medical expert in psychiatry after the hearing, incorporated those answers into the record, proffered the answers to Plaintiff's attorney, and received written confirmation from Plaintiff's attorney indicating that she had no comment on those records and that she did not require a supplemental hearing. Tr. 17, 295-98, 923-34.

With respect to not following medical recommendations, the ALJ also noted specific examples, such as Plaintiff's admission that he checks his blood sugar only one to three times per week instead of five times per day as Plaintiff acknowledged he should, and chart notes indicating that Plaintiff discharged from medical care against medical advice. The ALJ also listed specific examples of Plaintiff making contradictory statements about his abilities. For example, the ALJ noted that although Plaintiff alleged a learning disability, no doctor provided such diagnosis for this and that Plaintiff completed high school and then passed the introductory classes of film school and culinary school. The ALJ also noted contradictions between Plaintiff's testimony that he had never worked, with the fact that Plaintiff worked briefly as a janitor. Tr. 22. The ALJ also highlighted discrepancies in Plaintiff's testimony regarding his criminal arrest record and found that Plaintiff's

ability to conduct criminal activity shows a greater capacity for planning and carrying out activities than Plaintiff admits. Id.

Finally, the ALJ listed specific examples of Plaintiff's ADLs contradicting Plaintiff's allegations of totally disabling impairments. For example, the ALJ noted that Plaintiff worked as a janitor, does chores and yardwork, lived alone and adequately cared for himself, managed his own finances and panhandled for money, read newspapers for pleasure, and was able to understand what he read. Id.

Accordingly, this Court finds that the ALJ provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony by identifying which testimony the ALJ found not credible and explaining which evidence contradicted that testimony. As such, the Court has no basis to disagree with the ALJ's credibility finding or that the ALJ's analysis was incorrect. Therefore, this Court affirms the ALJ's credibility determination.

## IV. CONCLUSION

Because the Commissioner's decision is based on the proper application of the correct legal standards and is supported by substantial evidence in the record, the Commissioner's final decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

DATED: 6/8/2018

HONORABLE SHASHI H. KEWALRAMANI
United States Magistrate Judge